## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| HOBBICO, INC., *et al.*,[1] | ) | Case No.  18-10055 (KG) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: D.I. 17** |

### ORDER AUTHORIZING DEBTORS TO:  (A) USE CASH COLLATERAL ON AN EMERGENCY BASIS PENDING A FINAL HEARING; (B) INCUR POSTPETITION DEBT ON AN EMERGENCY BASIS PENDING A FINAL HEARING; AND (C) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO WELLS FARGO BANK, NATIONAL ASSOCIATION, AS AGENT, AND THE OTHER SECURED PARTIES

This matter came before this Court on the motion ("Motion") of Hobbico, Inc., an Illinois corporation, and the other Debtors requesting that this Court enter an order authorizing Debtors to (a) use certain Cash Collateral on an emergency basis pending a Final Hearing, (b) incur certain Postpetition Debt on an emergency basis pending a Final Hearing, and (c) grant adequate protection and provide security and other relief to Wells Fargo Bank, National Association, as administrative agent ("Prepetition Agent") for the lenders party from time to time to the Credit Agreement ("Prepetition Lenders") and the other Prepetition Secured Parties, and Wells Fargo Bank, National Association, as administrative agent ("Postpetition Agent"; together Prepetition Agent, "Agents") for the lenders party from time to time to the Postpetition Loan Agreement ("Postpetition Lenders"; together with Prepetition Lenders, including any successors or assigns of the Prepetition Lenders or the Postpetition Lenders, the "Lenders") and the other Postpetition Secured Parties. All capitalized terms used but not otherwise defined herein have the meanings assigned to them in Exhibit A attached hereto.

This Order constitutes findings of fact and conclusions of law under Fed. R. Bankr. P. 7052 and will take effect and be fully enforceable as of the Filing Date.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Hobbico, Inc. (9545); Axial R/C Inc. (0233); Estes-Cox Corp. (2196); Great Planes Model Manufacturing, Inc. (5259); Revell Inc. (8545); Tower Hobbies, Inc. (5185); and United Model, Inc. (5302).  The Debtors' headquarters are located at 2904 Research Road, Champaign, Illinois 61822.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn, resolved, or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

A.    On the Filing Date, Debtors filed voluntary petitions for relief under chapter 11 of the Code. Debtors have retained possession of their property and continue to operate their respective businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

B.    The Court has jurisdiction over the Cases and this proceeding under 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over the Motion is proper under 28 U.S.C. § 1409(a).

C.    No Committee has been appointed in these Cases.

D.    Subject to Paragraph 8 of this Order, each Debtor admits, stipulates, and agrees that:

1.    the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens, and the prepetition financing relationship among Debtors, Prepetition Agent, Prepetition Lenders, and the other Prepetition Secured Parties;

2.    the Prepetition Debt constitutes the legal, valid, and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents, all of which are deemed to be reaffirmed by the parties thereto;

3.    as of the Filing Date, Debtors are each liable for the payment and performance of the Prepetition Debt, and the Prepetition Debt is an allowed claim in an amount not less than $75,045,103.97, exclusive of (x) accrued and accruing Allowable 506(b) Amount, (y) Prepetition Debt in respect of "Secured Cash Management Agreements" (as defined in the Credit Agreement) and (z) Prepetition Debt in respect of "Secured Hedge Agreements" (as defined in the Credit Agreement);

4.    no offsets, defenses, or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination, or other

claim, cause of action, or challenge of any nature under the Code, applicable non-bankruptcy law, or otherwise;

5.        the Prepetition Liens are Priority Liens, subject to Permitted Priority Liens and Postpetition Liens and secure payment of all of the Prepetition Debt; and

6.        Debtors do not have, and each of the Debtors hereby absolutely, unconditionally, and irrevocably releases, remises, and discharges, and is forever barred from bringing or asserting, any claims, defenses, or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt, or otherwise, against Prepetition Agent, any Prepetition Lender, any other Prepetition Secured Party, and each of their respective successors and assigns, and their respective present and former shareholders, members, managers, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, advisors, principals, employees, consultants, agents, legal representatives, and other representatives.

E.        Prepetition Agent and Prepetition Secured Parties have consented to the terms of this Order and are entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362, 363, and 364 for any decrease in the value of their interests in the Prepetition Collateral from and after the Filing Date.

F.        Nothing in this Order will modify any of the terms or provisions of the Cyprium Subordination and Intercreditor Agreement.

G.        Debtors have agreed to remit Cash Collateral to Agents, and Debtors need to incur Postpetition Debt, as provided herein through the conclusion of the Final Hearing in order to prevent immediate and irreparable harm to Debtors' estates and to minimize disruption to, and avoid the termination of, their business operations. Entry of this Order will also enhance the possibility of maximizing the value of Debtors' businesses in connection with an orderly sale or other disposition of the Aggregate Collateral.

H.        Debtors are unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the operation of their businesses. Except as provided below, Debtors are unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2), or (c)(3) on terms more favorable than those offered by Postpetition Agent and Postpetition Lenders. An immediate

need exists for the Debtors to obtain Postpetition Debt in order to continue operations and to administer and preserve the value of their estates. The Debtors, as of the Filing Date, do not have sufficient cash resources to finance their ongoing operations and require the availability of working capital from Postpetition Debt, the absence of which would immediately and irreparably harm the Debtors, their estates, and creditors.

I.      The terms of the Postpetition Debt have been negotiated at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

J.      The terms and conditions of the Postpetition Documents are fair and reasonable, the best available to Debtors under the circumstances, reflect Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.

K.      Under the circumstances of these Cases, this Order is a fair and reasonable response to Debtors' request for Agents' and Lenders' consent to the use of Cash Collateral and the provision of Postpetition Debt, and the entry of this Order is in the best interest of Debtors' estates and their creditors.

L.      The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c), and 9014, and Code §§ 102(1), 363, and 364(c) and (d), and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1.      Authorization to Use Cash Collateral. Debtors are authorized to use Cash Collateral through the Termination Date solely in accordance with the terms of this Order.

2.      Procedure for Debtors' Use of Cash Collateral.

(a)      Remittance of All Cash Collateral to Postpetition Agent. Debtors must deposit all Cash Collateral now or hereafter in their possession or control into the Blocked Account (or otherwise remit such Cash Collateral to Postpetition Agent in a manner satisfactory to Postpetition Agent) promptly upon Debtors' receipt thereof for application in accordance with Paragraph 2(d) of this Order.

(b)      [*Reserved.*]

(c)      <u>Cash Collateral in Any Agents' or Lenders' Possession</u>.  Agents are authorized to collect upon, convert to cash, and enforce checks, drafts, instruments, and any other forms of payment now or hereafter coming into any Agent's or any Lender's possession or control that constitute Aggregate Collateral or proceeds thereof.

(d)      <u>Application of Cash Collateral</u>.  Except as Agents may otherwise elect in their discretion, Agents are authorized to apply all Cash Collateral now or hereafter in any Agent's or Lender's possession or control as follows: (1) first, to the payment of Prepetition Debt consisting of Allowable 506(b) Amounts, until Paid in Full; (2) second, to the payment of Prepetition Debt consisting of Prepetition Revolving Credit Obligations in accordance with the terms of the Prepetition Documents, until Paid in Full; (3) third, to the payment of all other Prepetition Debt other than the Specified Prepetition Debt in accordance with the terms of the Prepetition Documents, until Paid in Full; (4) fourth, to the payment of Postpetition Debt consisting of Postpetition Charges, until Paid in Full; (5) fifth, to the payment of all other Postpetition Debt in accordance with the terms of the Postpetition Documents, until Paid in Full; and (6) sixth, to the payment of Prepetition Debt consisting of the Specified Prepetition Debt, until Paid in Full. All such applications to Postpetition Debt shall be final and not subject to challenge by any Person, including, without limitation, any Debtor, the Committee, any Trustee, or Cyprium.  All such applications to Prepetition Debt shall be final, subject only to the right of parties in interest to seek a determination in accordance with Paragraph 8 below that any such application resulted in the payment of a claim that was not an allowed secured claim of Prepetition Agent and Prepetition Lenders. Any amounts that are determined by the Court as a result of any such objection or determination to have been improperly applied to the Prepetition Debt will be first applied to pay Postpetition Debt consisting of Postpetition Charges and then to all other Postpetition Debt, dollar-for-dollar, until Paid in Full.

(e)      <u>Prohibition Against Use of Cash Collateral</u>. Unless otherwise consented to by Agents in writing, in Agents' discretion, Debtors may not use, seek to use, or be permitted to use any Cash Collateral for any purpose until the Aggregate Debt is Paid in Full; <u>provided</u>, <u>however</u>, that Debtors may use Cash Collateral solely as provided for in this Order.

3.    <u>Authorization To Incur Postpetition Debt</u>.

(a)    <u>Postpetition Documents</u>. Debtors are authorized and have agreed to (1) execute the Postpetition Documents, including, without limitation, all documents that Postpetition Agent and Postpetition Lenders find reasonably necessary to implement the transactions contemplated by the Postpetition Documents, and (2) perform their obligations under, and comply with, all of the terms and provisions of the Postpetition Documents and this Order. Upon execution and delivery thereof, the Postpetition Documents will constitute valid and binding obligations of Debtors enforceable in accordance with their terms. To the extent that there exists any conflict among the terms of the Motion, the Postpetition Documents, and this Order, this Order will govern and control.

(b)    <u>Permitted Uses of Postpetition Debt</u>. Debtors are authorized and have agreed to incur Postpetition Debt solely: (1) in accordance with the terms and provisions of this Order; (2) to the extent required to pay those expenses enumerated in the Budget, including, without limitation, the Carveout, as and when such expenses become due and payable, subject to the Permitted Variance and the terms of the Postpetition Documents; (3) to pay Allowable 506(b) Amounts and Postpetition Charges; and (4) as expressly permitted pursuant to the Postpetition Documents. If Postpetition Lenders advance monies to Debtors and Debtors use any such monies other than in accordance with the terms and provisions of this Order, then such advances will be considered to be Postpetition Debt for purposes of this Order.

(c)    <u>Refinancing of Certain Outstanding Prepetition Debt Upon Entry of Final Order</u>. Effective upon entry of the Final Order, Debtors are authorized and have agreed to incur Postpetition Debt under the Postpetition Loan Agreement to refinance, in full, an aggregate amount of the Prepetition Debt equal to the amount of (i) all of the Prepetition Debt outstanding as of the date of calculation <u>minus</u> (ii) the amount of the Specified Prepetition Debt. Such refinancing of such portion of the Prepetition Debt upon entry of the Final Order will be final, subject only to the right of parties in interest to seek a determination in accordance with Paragraph 8 of this Order that such payment resulted in the payment of a claim that was not an allowed secured claim of Prepetition Agent and Prepetition Lenders. Any amounts that are disgorged in connection with any such objection or determination will be first applied to pay

Postpetition Debt consisting of Postpetition Charges and then to all other Postpetition Debt in accordance with Paragraph 2(d) of this Order, dollar-for-dollar, until Paid in Full.

(d)    Certain Additional Material Terms of Postpetition Debt.

(i)    Maximum Amount. The maximum principal amount of Postpetition Debt outstanding may not at any time exceed the DIP Commitment, subject to the terms and conditions of the Postpetition Loan Agreement.

(ii)    Interest. (A) "Revolving Credit Loans" (as defined in the Postpetition Loan Agreement) will bear interest at a per annum rate equal to the Base Rate (as defined in the Postpetition Loan Agreement) plus 4.75% (exclusive of any default rate interest that may be imposed under the Postpetition Loan Agreement) and (B) "Term Loans" (as defined in the Postpetition Loan Agreement) will bear interest at a per annum rate equal to the Base Rate (as defined in the Postpetition Loan Agreement) plus 7.75% (exclusive of any default rate interest that may be imposed under the Postpetition Loan Agreement).

(iii)    Contingent Obligations. Upon the entry of the Final Order, all of the Prepetition Debt consisting of contingent Prepetition Debt in respect of "Letters of Credit" will be deemed to be assumed by the Debtors and reissued by the Debtors under the Postpetition Documents as Postpetition Debt. All of the Assumed Prepetition Secured Obligations will be deemed to be assumed by Debtors and incurred under the Postpetition Documents as Postpetition Debt.

(iv)    Closing Fee. $750,000 for the ratable benefit of the Postpetition Lenders, all of which shall be fully earned on the date hereof, with $250,000 due and payable on the date hereof and $500,000 due and payable upon entry of the Final Order.

(v)    Maturity. The Postpetition Debt will mature and be due and payable in full by Debtors on the Termination Date.

(vi)    Prepetition Documents. Each Subordination Agreement, Prepetition Third Party Document, and other Prepetition Document will remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of any Cash Collateral consented to by Agents and Lenders pursuant to Code § 363 or additional financing by Agents and Lenders pursuant to Code § 364. Each "Borrower" and "Guarantor" (as each such term is defined in the Credit Agreement) is and will remain liable for all guaranteed obligations and indebtedness under the Prepetition Documents.

(vii) <u>Joint and Several Liability of Debtors</u>. The obligations of each Debtor under this Order are joint and several.

(viii) <u>Deposit Account Control Agreements</u>. All deposit account control agreements, including, without limitation, the Control Agreements, in effect as of the Filing Date will remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order.

(e) <u>Superpriority Administrative Expense Status; Postpetition Liens</u>. The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Cases that are incurred under any provision of the Code other than the Carveout. In addition, Postpetition Agent is hereby granted the Postpetition Liens, for the benefit of itself, the Postpetition Lenders, and the other Postpetition Secured Parties, to secure the Postpetition Debt. The Postpetition Liens: (1) are in addition to the Prepetition Liens; (2) under Code §§ 364(c)(2), 364(c)(3), and 364(d), are Priority Liens (subject only to Permitted Priority Liens) without any further action by Debtors or Postpetition Agent, and without the execution, delivery, filing, or recordation of any financing statements, security agreements, control agreements, title notations, mortgages, or other documents or instruments; (3) will not be subject to any security interest or lien that is avoided and preserved under Code § 551; (4) will remain in full force and effect notwithstanding any subsequent conversion or dismissal of any Case; (5) will not be subject to Code § 510(c); and (6) upon entry of the Final Order, will not be subject to any landlord's lien, banker's lien, bailee's rights, carrier's lien, right of distraint or levy, security interest, right of setoff, or any other lien, right, or interest that any bailee, warehousemen, bank, processor, shipper, carrier, or landlord may have in any or all of the Aggregate Collateral. Without limiting the foregoing, Debtors must deliver to Postpetition Agent any such financing statements, security agreements, control agreements, mortgages, title notations, and other documents and instruments as Postpetition Agent may reasonably request from time to time in its discretion. Further, Prepetition Agent will serve as agent for Postpetition Agent for purposes of perfecting Postpetition Agent's security interest in any Postpetition Collateral that may require perfection by possession, control, or title notation, including, without limitation, under the Control Agreements. In addition, all Prepetition Third Party Documents will be deemed to be for the benefit of Postpetition Agent and the Postpetition Secured Parties without any further order of Court or action by any Person. Without limiting the foregoing, Postpetition Agent, for itself and the Postpetition Secured Parties, has,

and will be deemed to have, a perfected Postpetition Lien on all existing deposit accounts of each Debtor and any new deposit account that any Debtor may establish on or after the date hereof without any further action by Debtors or Postpetition Agent.

(f)    Prohibition Against Additional Debt.    Debtors may not incur or seek to incur debt secured by a lien which is equal to, or superior to, the Prepetition Liens or the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364:  (1) Agents have consented to such order; (2) at the time such an order is entered, there is no Postpetition Debt outstanding, and no obligation of Postpetition Lenders to extend Postpetition Debt; or (3) such credit or debt is first used to, and is sufficient to, cause the Aggregate Debt to be Paid in Full .

4.    Adequate Protection of Interests of Prepetition Agent and Prepetition Secured Parties in the Prepetition Collateral and the Prepetition Liens.    Prepetition Agent and Prepetition Secured Parties have consented to the terms of this Order and are entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362, 363, or 364 for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date on account of the stay, use, sale, lease, license, grant, or other disposition of any Prepetition Collateral.

(a)    Interest Payments to Prepetition Lenders. Debtors will timely make monthly payments of interest and letter of credit commissions to the Prepetition Lenders at the non-default rate as provided for in, and in accordance with, the Credit Agreement commencing on the first scheduled payment date occurring after the Filing Date, whether or not included in the Budget.

(b)    Priority of Prepetition Liens; Allowance of Prepetition Agent's and the Prepetition Secured Parties' Claim. Subject to the terms of Paragraph 8 of this Order: (1) the Prepetition Liens constitute Priority Liens, subject only to the Postpetition Liens and Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid, and binding obligation of each Debtor, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses, or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable non-

bankruptcy law; and (4) Prepetition Agent's and Prepetition Secured Parties' claim with respect to the Prepetition Debt is for all purposes an allowed claim within the meaning of Code § 506, exclusive of accrued and accruing Allowable 506(b) Amounts.

(c)    Replacement Liens.    Prepetition Agent is hereby granted the Replacement Liens, for the benefit of itself and the Prepetition Secured Parties, as security for the complete payment and performance of the Prepetition Debt. The Replacement Liens: (1) are in addition to the Prepetition Liens; (2) are properly perfected, valid, and enforceable liens without any other or further action by Debtors or Prepetition Agent, and without the execution, filing, or recordation of any financing statement, security agreement, control agreement, mortgage, title notation, or other document or instrument; and (3) will remain in full force and effect notwithstanding any subsequent conversion or dismissal of any Case. Without limiting the foregoing, Debtors are authorized to, and must, execute and deliver to Prepetition Agent any such financing statements, security agreements, control agreements, mortgages, title notations and other documents and instruments as Prepetition Agent may request from time to time in its discretion in respect of the Replacement Liens.

(d)    Allowed Code § 507(b) Claim.    If and to the extent the adequate protection of the interests of Prepetition Agent and the other Prepetition Secured Parties in the Prepetition Collateral granted pursuant to this Order proves insufficient, Prepetition Agent and the other Prepetition Secured Parties will have an allowed claim under Code § 507(b), subject and subordinate to the Carveout, in the amount of any such insufficiency, with priority over (1) any and all costs and expenses of administration of the Cases (other than the claims of Postpetition Agent, Postpetition Lenders, and the other Postpetition Secured Parties under Code § 364) that are incurred under any provision of the Code and (2) the claims of any other party in interest under Code § 507(b).

(e)    Cash Consideration. As further adequate protection of the interests of Prepetition Agent and the other Prepetition Secured Parties in the Prepetition Collateral, unless Prepetition Agent may otherwise subsequently agree in writing in its discretion, any sale or other disposition of all or any portion of the Aggregate Collateral outside of the ordinary course of Debtors' businesses must be for cash consideration until the Aggregate Debt has been Paid in Full pursuant to the Prepetition Documents and the Postpetition Documents.

5.      Termination Date; Rights and Remedies.

(a)      Effect of Termination Date.  Unless extended by the Court upon the written agreement of Postpetition Agent, upon the Termination Date without further notice or order of Court: (1) Debtors' authorization to use Cash Collateral and to incur Postpetition Debt hereunder will automatically terminate; and (2) at Postpetition Agent's election (i) the Postpetition Debt will be immediately due and payable in full in cash, (ii) Debtors will be prohibited from using any Cash Collateral for any purpose other than for application to the Aggregate Debt in accordance with Paragraph 2(d) of this Order, and (iii) Agents will be entitled to setoff any and all Cash Collateral in the possession or control of any Agent or any Lender and apply such Cash Collateral to the Aggregate Debt in accordance with Paragraph 2(d) of this Order.

(b)      Rights and Remedies.  On the fifth (5th) business day after the Termination Date, at Postpetition Agent's election without notice or further order of the Court: (1) Agents will have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and will be entitled to exercise all rights and remedies available to them under the Prepetition Documents, the Postpetition Documents, and applicable non-bankruptcy law; and (2) Debtors must surrender the Aggregate Collateral promptly upon written demand by any Agent and will not interfere in any manner with Agents and Lenders in the exercise of their rights and remedies under the Prepetition Documents, the Postpetition Documents, and applicable non-bankruptcy law, and will file a motion to retain one or more agents to sell, lease, or otherwise dispose of the Aggregate Collateral upon the request of, and subject to terms and conditions acceptable to, Agents.  Notwithstanding the foregoing, during the five (5) business day period following the Termination Date, Debtors, any Committee, and the United States Trustee may seek an order of this Court determining that an Event of Default alleged to have given rise to the Termination Date did not occur; provided, however, that during such five (5) business day period, Postpetition Lenders will have no obligation whatsoever to advance any Postpetition Debt to Debtors.

(c)      Access to Aggregate Collateral.  Upon the entry of the Final Order, notwithstanding anything to the contrary herein or in any Prepetition Third Party Document or

Postpetition Document, upon written notice to the landlord of any of the Debtors' leased premises that an Event of Default has occurred and is continuing, Agents may elect to (but will not be obligated to) enter upon any such leased premises for the purpose of exercising any right or remedy with respect to the Aggregate Collateral located thereon and will be entitled to such Debtor's rights and privileges under such lease without any interference from such landlord; provided, however, that such Agent shall pay to such landlord rent first accruing after the date on which such Agent commences occupancy of the leased premises, calculated on a per diem basis at the non-default rate of rent, solely for the period during which Agent actually occupies such leased premises.

      6.    <u>Carveout</u>.

      (a)    <u>Carveout Terms</u>. The Carveout with respect to each Carveout Professional: (1) equals an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the applicable line item in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date; provided that any such Carveout Professional may utilize any unused budget amount from an applicable week for an overage in another week in the Budget during the period from the Filing Date until the Termination Date so long as the aggregate amount for such Carveout Professional does not exceed the aggregate line item in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date (subject to the proviso for Neal, Gerber & Eisenberg LLP and Morris, Nichols, Arsht & Tunnell LLP, CR3 Partners, LLC, and Keystone Consulting Group, LLC in paragraph 6(c) below),  and (ii) the aggregate amount of allowed fees and expenses that accrue during the period commencing on the Filing Date and ending on the Termination Date; (2) will be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional; and (3) includes any Specified Retainer held by such Carveout Professional; <u>provided</u>, that, with respect to the foregoing sub-section (3), each Carveout Professional holding a Specified Retainer may elect to maintain its Specified Retainer until the occurrence of the Termination Date in order to pay any allowed but unpaid Carveout amounts owing to such Carveout Professional as of the Termination Date, in each case, subject to the terms and conditions of this Order. Subject to the last sentence of this Paragraph 6(a), upon the Termination Date, the Postpetition Lenders will provide Postpetition Debt to Debtors, to be used by Debtors for the sole purpose of funding Carveout Professionals for fees and expenses

first incurred after the Termination Date, in the aggregate amount of $50,000 (minus the amount of any remaining Specified Retainers, net of any professional fees and expenses accrued and unpaid as of the Termination Date). Postpetition Agent and Postpetition Lenders have, and will retain, the continuing right from time to time, in their discretion, to reserve against the DIP Commitment and availability in respect of all of the Carveout obligations from time to time, including, without limitation, by establishing one or more "Reserves" (as such term is defined in the Postpetition Loan Agreement) under the Postpetition Loan Agreement. Except as set forth in this paragraph, Postpetition Agent and Postpetition Lenders will not have any obligation to fund any fees, costs, expenses, or any other amounts of any Carveout Professional accrued at any time on, prior to, or after the Termination Date. After the occurrence of the Termination Date, any surplus portion of any prepetition or postpetition retainers of any Carveout Professional (including any Specified Retainer) that may remain after the payment of all allowed Carveout amounts payable to such Carveout Professional under the Carveout shall be returned to the Agents within three (3) business days after the date on which all such allowed Carveout amounts were first paid in full for application in accordance with Paragraph 2(d) of this Order. Nothing contained herein constitutes, or may be construed to be, consent by any Person to the allowance of any fees, costs, expenses, or other amount of any Carveout Professional, and shall not affect the rights of Debtors, Agents, Lenders, any Committee, the United States Trustee, or any other party in interest to object to the allowance or payment of any amounts incurred or requested. For the avoidance of doubt, Lincoln is a Carveout Professional for purposes of the Carveout, the Carveout constitutes a Permitted Priority Lien and the Carveout for Lincoln is subject to the terms and conditions of the Lincoln Engagement Agreement, the Lincoln Consent and Acknowledgment, and this Order to the extent approved by the Court and except as otherwise agreed to in writing by Agents and Lincoln.

(b) <u>Carveout Usage</u>. No portion of the Carveout and no Postpetition Debt or Aggregate Collateral may be used to pay any fees or expenses incurred by any Person, including any Debtor, any Committee, or any Carveout Professional, in connection with claims or causes of action adverse (or which claim an interest adverse) to any Agent, any Lender, any other Secured Party, or any of their respective rights or interests in the Aggregate Collateral, the Postpetition Documents, or the Prepetition Documents, including, without limitation, (1) preventing, hindering, or delaying any Agent's or any other Secured Party's enforcement or

realization upon any of the Aggregate Collateral or the exercise of their rights and remedies under this Order, any Postpetition Document, any Prepetition Document, or applicable law, in each case, once an Event of Default has occurred, (2) using or seeking to use any Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Agents' and Lenders' written consent, or (3) objecting to, or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any Aggregate Debt, any Prepetition Document, any Postpetition Document, or any mortgages, liens, or security interests with respect thereto or any other rights or interests of any Agent or any other Secured Party, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against any Agent or any other Secured Party; _provided, however,_ that the foregoing shall not apply to costs and expenses, in an aggregate amount not to exceed $25,000, incurred by all of the Committee's Carveout Professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 8 of this Order; _provided, further, however,_ that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation, and entry of this Order or any amendment hereto consented to by Postpetition Agent.

      (c)    _Carveout Procedure._ Debtors must, upon request of Postpetition Agent, provide to Postpetition Agent a written report ("_Carveout Report_"), in which Debtors disclose their then current estimate of (1) the aggregate amount of unpaid professional fees, costs, and expenses accrued or incurred by the Carveout Professionals through the date of the Carveout Report, and (2) the projected fees, costs, and expenses of the Carveout Professionals for the thirty (30) day period following the date of such Carveout Report. Nothing herein may be construed as consent by Agents or Lenders to the allowance of any fees, costs, or expenses of the Carveout Professionals or will affect the right of Agents or any Lender to object to the allowance and payment of any such fees, costs, or expenses, or the right of Agents or any Lender to the return of any portion of the Carveout that is funded with respect to fees, costs, and expenses for a Carveout Professional that are approved on an interim basis, but that are later denied on a final basis. No Carveout Professional will be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget; _provided, however,_ that (x) Neal, Gerber & Eisenberg LLP, as counsel for Debtors, and Morris, Nichols, Arsht & Tunnell LLP, as local counsel for Debtors, may share in each other's portion of the Carveout as set forth in the Budget, and (y)

CR3 Partners, LLC, as the Debtors' chief restructuring officer, and Keystone Consulting Group, LLC, as providers of management services for Debtors, may also share in each other's portion of the Carveout as set forth in the Budget. Nothing contained in this Order shall in any way limit or impair the ability of any Carveout Professional to assert or defend its fees and expenses or to seek allowance and payment of any fees and expenses of such Carveout Professional that may be in excess of, and therefore not included in, the Carveout, subject to the terms and conditions of this Order.

7. **No Surcharge**.  Debtors represent that the Budget contains a good faith estimate of all of the expenses that are reasonable and necessary for the operation of Debtors' businesses and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes any and all items potentially chargeable to Agents and Lenders under Code § 506(c).  Therefore, in the exercise of their business judgment, subject to entry of the Final Order, Debtors (or any Trustee) agree that there will be no surcharge of the Aggregate Collateral for any purpose unless agreed to in writing by Agents and Lenders, and effective upon entry of the Final Order, each Debtor (or any Trustee), on behalf of its estate, will be deemed to have waived any and all rights, benefits, or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, and under any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to, or be asserted against, any Agent, any Lender, or any of the Aggregate Collateral. In reliance on the foregoing, Agents and Lenders have agreed to the entry of this Order.

8. **Reservation of Rights; Bar of Challenges and Claims**.  The stipulations and representations contained in this Order, including, without limitation, in Paragraph D, will be binding on all Challenge Parties and all other parties-in-interest, unless (i) a Challenge Party timely commences a Challenge during the Investigation Period and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge, in which case all of the stipulations and representations contained in this Order will be binding on all such Persons other than the stipulations or representations that were the subject of any such successful Challenge.

(a) **Challenge Procedure**.  During the Investigation Period, a Challenge Party will be entitled to determine whether a basis to assert a Challenge exists.  If a Challenge Party identifies a basis to assert a Challenge, then it must notify Debtors and Prepetition Agent in

writing during the Investigation Period of its demand that Debtors initiate a contested matter or an adversary proceeding in these Cases in respect of such Challenge. From the date that Debtors and Prepetition Agent receive such written notice, Debtors will then have five (5) days to notify the Challenge Party of whether Debtors intends to initiate any such action and ten (10) days to initiate any such action. If Debtors notify such Challenge Party that Debtors do not intend to initiate a contested matter or an adversary proceeding, then such Challenge Party will have ten (10) days from the receipt of such notice to file a motion with the Court for leave to initiate a contested matter or an adversary proceeding in respect of such Challenge. Nothing herein grants standing in favor of any Challenge Party absent further order of this Court. Debtors, if timely notified of a potential Challenge, will retain authority to prosecute, settle, or compromise any such Challenge in the exercise of its business judgment and subject to any applicable further order of Court. Nothing in this paragraph shall affect or truncate the Investigation Period and such Investigation Period shall be tolled or extended in order to effectuate the process and procedure contemplated hereunder in order to not prejudice any such Investigation Party.

(b)    <u>Bar of Challenges and Claims</u>.  Subject to the expiration of the Challenge Period, if a timely-asserted Challenge is not successful, then without further order of the Court, (1) the claims, liens, and security interests of Prepetition Agent, the Prepetition Lenders and the other Prepetition Secured Parties will and will be deemed to be allowed for all purposes in the Cases and will not be subject to any challenge whatsoever by any party in interest, including, without limitation, as to validity, extent, amount, perfection, priority, enforceability, or otherwise, and (2) Debtors and their respective estates will be deemed to have absolutely, unconditionally, and irrevocably waived, released, and discharged Prepetition Agent, each Prepetition Lender, each other Prepetition Secured Party, and each of their respective successors and assigns, and each of their respective present and former shareholders, members, managers, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, advisors, principals, employees, consultants, agents, legal representatives, and other representatives of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every kind, nature, and description whatsoever, that may have occurred on or prior to the date of entry of this Order with respect to, or in connection with, the Prepetition Debt, the Prepetition Liens, or any of the Prepetition Documents.

9.      Sale Covenants.  To effectuate the sale process for all, or substantially all, of Debtors' assets, Debtors have agreed to, and are authorized to, timely satisfy each of the "Sale Covenants" set forth and defined in Section 8.21 and Schedule 8.21 of the Postpetition Loan Agreement. Debtors, Agents, and requisite Lenders may agree to amend or otherwise modify such sale covenants from time to time, in writing, without the need of any further notice, hearing, or order of this Court (other than a notice of such amendment or modification to be filed with this Court).

10.      Right to Credit Bid.  In connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363, Code § 1129 or otherwise, pursuant and subject to Code § 363(k), (a) Postpetition Agent will have the continuing right to use the amounts then outstanding under the Postpetition Debt, or any part thereof, to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral and (b) subject to Paragraph 8 of this Order, Prepetition Agent will have the continuing right to use the amounts then outstanding under the Prepetition Debt, or any part thereof, to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral. With respect to any such sale or other disposition of all or any portion of the Aggregate Collateral, and any auction and sale process relating thereto, each Agent (and its respective designees) is, and will be deemed to be, a qualified bidder for all purposes under any sale and bidding procedures, and any order approving any bidding and sale procedures, and may attend and participate at any auction and any sale hearing, in each case, without regard to any of the requirements or conditions set forth therein and without any other or further action by such Agent or designee.

11.      Plan. Unless Agents subsequently consent in writing, Debtors will not seek entry of an order confirming any plan in any Case unless the Aggregate Debt shall be Paid in Full on the earlier of (a) the effective date of such plan or (b) the Termination Date, notwithstanding anything to the contrary in any such order confirming a plan.

12.      Application of Sale Proceeds.  All proceeds from any sales or any other dispositions of all or any portion of the Aggregate Collateral not in the ordinary course of Debtors' businesses will be remitted to Agents for application to the Aggregate Debt, subject to Paragraph 2(d) of this Order.

13.    <u>Waiver of Right to Return/Consent to Setoff</u>.  Without the prior written consent of Agents and Lenders, Debtors will not agree or consent to any of the following: (a) to return any Aggregate Collateral pursuant to Code § 546(h); (b) to consent to any order permitting or allowing any claims pursuant to Code § 503(b)(9); or (c) to consent to setoff pursuant to Code § 553.

14.    <u>Tax Obligations</u>. Debtors will timely pay or remit, as applicable, all sales tax, payroll tax, and trust fund tax obligations under applicable law from time to time that are set forth in the Budget.

15.    <u>Indemnification</u>.  Debtors will indemnify and hold harmless Prepetition Agent and Prepetition Lenders, and Postpetition Agent and Postpetition Lenders, in accordance with the terms of the Prepetition Documents and the Postpetition Documents, respectively.

16.    <u>No Marshaling</u>.  None of the Agents, Lenders, or any of the Aggregate Collateral will be subject to the doctrine of marshaling.

17.    <u>Postpetition Charges</u>.  All Postpetition Charges must be promptly paid by Debtors in accordance with this Order and the Postpetition Documents, without need for filing any application with the Court for approval or payment thereof.  The invoices for the Postpetition Charges shall not be required to comply with the U.S. Trustee guidelines and shall be provided to the Fee Notice Parties. The invoices to be provided to the Fee Notice Parties may contain reasonable detail, may contain redactions, and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  If no objection to payment of the requested fees and expenses are made, in writing by any of the Fee Notice Parties within the Fee Objection Period, then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors.  If an objection (solely as to reasonableness) is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors.

18.     Force and Effect of Prepetition Documents; Subordination Agreements.
Except as modified herein, and subject to the other provisions of this Order (including Paragraph 8 hereof) and the Code, the Prepetition Documents and the Prepetition Third Party Documents will remain in full force and effect with respect to the Prepetition Debt.  To the extent that there exists any conflict among the terms of the Motion, the Prepetition Documents, the Prepetition Third Party Documents, and this Order, this Order governs and controls. Without limiting the foregoing, the Cyprium Subordination and Intercreditor Agreement and each other Subordination Agreement (a) is and will remain valid and binding on each of the parties thereto notwithstanding the entry of this Order, (b) constitutes a "subordination agreement" within the meaning of Code § 510, and (c) is fully enforceable in accordance with its terms and provisions. The consent by any Agent or Lender to entry of this Order will not prejudice any rights of any Agent or Lender under the Cyprium Subordination and Intercreditor Agreement or any other Subordination Agreement.

19.     Modification of Stay.   The automatic stay of Code § 362 is hereby modified with respect to Agents and Lenders to the extent necessary to effectuate the provisions of this Order, including, without limitation, after the Termination Date to permit Agents and Lenders to exercise their respective rights contemplated by Paragraph 5 above.

20.     No Waiver.  None of the Agents, the Lenders, or the other Secured Parties will be deemed to have suspended or waived any of their rights or remedies under this Order, the Prepetition Documents, the Postpetition Documents, the Code, or applicable non-bankruptcy law unless such suspension or waiver is hereafter made in writing, signed by a duly authorized officer of Agents, Lenders, or such other Secured Parties, as applicable, and directed to Debtors. No failure of any Agent or any other Secured Party to require strict performance by any Debtor (or by any Trustee) of any provision of this Order will waive, affect, or diminish any right of Agents or any other Secured Party thereafter to demand strict compliance and performance therewith, and no delay on the part of Agents or any other Secured Party in the exercise of any right or remedy under this Order, the Prepetition Documents, the Postpetition Documents, the Code, or applicable non-bankruptcy law will preclude the exercise of any right or remedy. Further, this Order does not constitute a waiver by Prepetition Agent or the other Prepetition Secured Parties of any of their rights under the Prepetition Documents, the Code, applicable non-bankruptcy law, including, without limitation, their right to later assert: (a) that any of their

interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof or (b) a claim under Code § 507(b).

21.    "Responsible Person". By taking any actions pursuant to this Order, Postpetition Agent and Postpetition Lenders will not be deemed to be (a) in control of the operations or liquidation of any Debtor or (b) acting as a "responsible person" with respect to the operation, management, sale, or liquidation of any Debtor.

22.    Release. Upon the date that the Postpetition Debt is Paid in Full and prior to the release of the Postpetition Liens, each Debtor, on behalf of its estate and itself, must execute and deliver to Postpetition Agent, Postpetition Lenders, the other Postpetition Secured Parties, and each of their respective successors and assigns, and each of their  respective present and former affiliates, shareholders, subsidiaries, divisions, predecessors, members, managers, directors, officers, attorneys, employees, agents, advisors, principals, consultants, and other representatives (collectively, the "Releasees"), a general release of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every kind, nature, and description, that Debtors (or any of them) had, have, or hereafter can or may have against the Releasees (or any of them), whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, in equity, or otherwise, in respect of events that occurred on or prior to the date on which the Postpetition Debt is Paid in Full.

23.    Amendments. Debtors, Postpetition Agent, and Postpetition Lenders may enter into amendments or modifications of the Postpetition Documents or the Budget without any further notice, hearing, or order of this Court; provided, however, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court and provided to any Committee and the United States Trustee.

24.    Proof of Claim. Neither Prepetition Agent nor any of the other Prepetition Secured Parties is required to file a proof of claim with respect to any of the Prepetition Debt and the stipulations and findings set forth in this Order constitute an informal proof of claim in respect thereof. Notwithstanding the foregoing or any subsequent order of Court concerning any proof of claim filing requirements, Prepetition Agent is authorized (but is not obligated) to file a single master proof of claim in the case of Hobbico, Inc. on behalf of itself and the Prepetition

Secured Parties on account of their claims under the Prepetition Documents and hereunder, and any such master proof of claim will be deemed to be filed as a claim against each Debtor in each Case.

25.     Binding Effect.  Except as provided in Paragraph 8 herein, this Order is binding on all parties in interest in the Cases and their respective successors and assigns, including, without limitation, any Trustee, except that any Trustee will have the right to terminate this Order after notice and a hearing, subject to the terms and conditions of this Order. If, in accordance with Code § 364(e), this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of this Order are hereafter modified, amended, vacated, or stayed by any subsequent order of this Court or any other court, such termination or subsequent order will not affect: (a) subject to Paragraph 8 of this Order, any of the agreements, stipulations, representations, or findings contained in this Order, or any of the relief granted by, or any of the releases contained in, this Order; and (b) the validity, extent, amount, perfection, priority, enforceability, or effectiveness of any lien, security interest, or other benefit or claim authorized hereby with respect to Cash Collateral remitted (subject to Paragraph 8 of this Order), or Postpetition Debt incurred, prior to the effective date of such termination or subsequent order.  All such liens, security interests, claims, and other benefits will be governed in all respects by the original provisions of this Order, and Postpetition Agent, Postpetition Lenders, and the other Postpetition Secured Parties will be entitled to all of the rights, remedies, privileges, and benefits granted herein, including, without limitation, the liens and priorities granted herein with respect to the Postpetition Debt. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or may be deemed to be, a third party beneficiary of this Order.

26.     Survival.  The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, including the Carveout, subject to the terms of Paragraph 6 hereof, will survive entry of, and govern in the event of any conflict with, any order that may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) after the occurrence of the Termination Date or an Event of Default, (e) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of this Order, including, without limitation, the rights granted to

-21-

Postpetition Agent, Postpetition Lenders, and the other Postpetition Secured Parties under Code §§ 364(c) and (d), will continue in full force and effect until all of the Aggregate Debt is Paid in Full.

      27.   <u>Notice of Final Hearing</u>.   The Final Hearing is scheduled for <u>January 30, 2018</u>, at <u>10:00</u> a.m., and may be continued from time to time without further notice other than that given in open court. Debtors are directed to immediately serve a copy of this Order by first class mail, postage prepaid, on counsel for Agents, any Persons that have asserted a lien or other interest in any of Debtors' assets, Debtors' thirty (30) largest unsecured creditors, all taxing authorities that have, or whom the Debtors believe may, assert claims against the Debtors or any of the Debtors' assets, and the United States Trustee, which service will constitute adequate and proper notice of the Final Hearing. Any objection to the Order must be filed with the Court so as to be received by counsel for the Debtors, Agents, Cyprium, and the United States Trustee by <u>Jan. 25, 2018</u>, at 4:00 p.m. (Eastern Time).


Dated: <u>January 11</u>, 2018
      Wilmington, Delaware


THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE