**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>HOBBICO, INC., *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 18-10055 (KG)<br><br>(Jointly Administered)<br><br>**Objection Deadline: March 16, 2018, at 4:00 p.m. (ET)**<br><br>**Hearing Date: March 28, 2018, at 10:00 a.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
APPROVING THE AMENDMENT TO THE POSTPETITION
LOAN AGREEMENT AND FINAL DIP ORDER**

Hobbico, Inc. ("Hobbico") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") file this motion (this "Motion") to amend the Final Financing Order, in the form attached hereto as **Exhibit A** (the "Proposed Order"), approving the second amendment (the "Second Amendment") to the Postpetition Loan Agreement,[2] attached thereto as Exhibit A. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Hobbico, Inc. (9545); Arrma Durango Ltd.; Tower Hobbies, Inc. (5185); Great Planes Model Manufacturing, Inc. (5259); United Model, Inc. (5302); Revell Inc. (8545); Estes-Cox Corp. (2196); and Axial R/C Inc. (0233). The Debtors' headquarters are located at 2904 Research Road, Champaign, Illinois 61822.

[2] Undefined terms used herein shall have the meanings ascribed to them in *Debtors' Motion for Entry of an Interim and Final Orders Authorizing Debtors to: (A) Use Cash Collateral on an Emergency Basis Pending a Final Hearing; (B) Incur Postpetition Debt on an Emergency Basis Pending a Final Hearing; and (C) Grant Adequate Protection and Provide Security and Other Relief to Wells Fargo Bank, National Association, as Agent, and the Other Secured Parties* (D.I. 17) (the "DIP Motion"), *Order Authorizing Debtors to: (A) Use Cash Collateral on a Final Basis; (B) Incur Postpetition Debt on a Final Basis; and (C) Grant Adequate Protection and Provide Security and Other Relief to Wells Fargo Bank, National Association, as Agent, and the Other Secured Parties* (D.I. 162) (the "Final Financing Order"), or the Second Amendment as applicable.

**Jurisdiction**

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012 (the "Amended Standing Order"). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory bases for the relief requested herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rules 2002-1, 4001-1 and 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

**Background**

**A.    General Background and the DIP Orders**

4.  On January 10, 2018 (the "Petition Date"), Hobbico, Inc. ("Hobbico") and six of its affiliates (together with Hobbico, the "Original Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Original Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.  No trustee or examiner has been appointed in the Debtors' cases. On January 22, 2018, the U.S. Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (D.I. 92).

6.  On the Petition Date, the Original Debtors also jointly filed motions or applications seeking certain typical "first day" relief (the "First Day Motions").

7. Additional factual background regarding the Original Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these bankruptcy cases, is set forth in the *Amended Declaration of Tom S. O'Donoghue, Jr. in Support of Chapter 11 Petitions and First Day Motions* (D.I. 34) (the "First Day Declaration").

8. Included among the First Day Motions was the DIP Motion. By the DIP Motion, the Debtors' requested authority to enter into the Postpetition Loan Agreement, providing postpetition financing for the Original Debtors. On January 11, 2018, the Court entered an order approving the Motion on an interim basis. (D.I. 56).

9. On February 14, 2018, the Court entered an order approving the Motion on a final basis (the "Final Financing Order"). The Final Financing Order also approved the first amendment (the "First Amendment") to the Postpetition Loan Agreement.

**B.    Arrma Durango Chapter 11 Petition**

10. On January 26, 2018, an additional debtor, Arrma Durango Ltd. ("ADL") filed a voluntary petition (the "ADL Petition") for relief under chapter 11 of the Bankruptcy Code, requesting joint administration for procedural purposes with the cases of the Original Debtors.

11. ADL is a wholly-owned subsidiary of Hobbico located in Derbyshire, England, which provides engineering, R&D and design services in support of Hobbico's Arrma product line.  Hobbico, and not ADL, recognizes sales related to the product line.  ADL has approximately sixteen (16) employees.  ADL receives no revenue from third parties, as it performs 100% of its services for the Debtors.  ADL regularly (at least weekly) provides budgets to Hobbico for funding, including funding of ADL's monthly payroll and other operating expenses.  Hobbico makes funding payments from a Wells Fargo controlled disbursement

account to ADL's Lloyd's USD operating account. Without such funding from its parent Hobbico, ADL would be unable to maintain itself as a going concern.

12. Additional factual background regarding ADL is set forth in the *Supplemental Declaration of Tom S. O'Donoghue in Support of Supplemental Joint Administration Motions* (Case No. 18-10158) (the "Supplemental Declaration"), which is fully incorporated herein by reference.

C. **The Guaranty Agreement, Counterpart and Second Amendment**

13. ADL will receive substantial direct and indirect benefits as a result of the various loans and financial accommodations extended to the Debtors by the Postpetition Lenders as provided in the Postpetition Documents and Final Financing Order. As a result, ADL seeks authority to enter into a guaranty agreement (the "Guaranty Agreement"), a counterpart (the "Counterpart"), and the Second Amendment with the Postpetition Agent.

14. Pursuant to the Guaranty Agreement, ADL, among other things, will agree to guarantee to the Postpetition Agent (a) the due and punctual payment of the Secured Obligations (as defined in the Guaranty Agreement) in accordance with the Postpetition Documents and (b) the punctual and faithful performance by the Debtors of the terms of the Postpetition Documents. The Guaranty is unlimited and includes Secured Obligations arising under successive transactions continuing or modifying the Secured Obligations. The Guaranty Agreement also provides for certain waivers and releases that are comparable to those included in other guaranty agreements.

15. Additionally, ADL seeks authority to enter into the Counterpart which joins ADL as a Grantor under the Debtor-in-Possession Pledge and Security Agreement, dated as of January 12, 2018 (the "Security Agreement"), among the Original Debtors and the Postpetition Agent. As

Grantor, ADL, among other things, will agree to provide a continuing security interest in all of its collateral to secure the prompt and complete payment and performance of the Secured Obligations.

16. In connection with the Guaranty Agreement and Counterpart, the Debtors seek the Court's authorization to enter into the Second Amendment with the Postpetition Agent. The Second Amendment amends the Postpetition Loan Agreement to, among other things, (a) incorporate ADL's obligations pursuant to the Guaranty Agreement into the Postpetition Loan Agreement and (b) establish terms related to the appointment of the Postpetition Agent as trustee for security interests created under a loan document governed by English law (an "English Security Agreement"). As trustee, the Postpetition Agent will administer the trust and, among other things, may (a) retain for its own account and benefit any fee, remuneration and profits paid to it in connection with its activities under the Postpetition Documents and its engagement with any Loan Party and (b) appoint Delegates and other persons to perform the duties, rights, powers and discretions vested in it by the English Security Agreements, and pay such Delegates or Appointees reasonable remuneration, costs and expenses in connection with their appointment. Additionally, the Second Amendment provides for limited liability for the Postpetition Agent in certain circumstances and provides for certain waivers comparable to those found in similar financing documents.

17. Further, in connection with the foregoing, the Debtors seek the Court's authorization to enter into or deliver from time to time any such other or additional documents, instruments, or agreements as the Postpetition Agent may reasonably request from time to time in connection with the obligations of ADL under the Postpetition Documents.

**Relief Requested**

18. By this Motion, the Debtors request that the Court enter the Proposed Order, attached hereto as **Exhibit A**, (a) authorizing the Debtors to enter into the Second Amendment and authorizing the Debtors to perform all actions in connection therewith and (b) amending the Final Financing Order.

**Local Rule 4001-2(a)(i) Disclosures**

19. Local Rule 4002(a)(i) requires the disclosure of certain provisions that are contained in postpetition financing motions and proposed orders or in the loan documents underlying those pleadings. The Debtors have previously highlighted such provisions in the DIP Motion, which were approved on a final basis in the Final Financing Order.

**Basis for Relief**

**I.     The Requested Relief Should Be Granted Pursuant to Section 364 of the Bankruptcy Code.**

19. The Debtors' ability to maximize the value of their estates and successfully sell their business operations hinges upon their access to postpetition financing. Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit outside the ordinary course of business, and (c) obtaining credit with specialized priority or on a secured basis. Pursuant to section 364(c) of the Bankruptcy Code, if a debtor cannot obtain postpetition credit on an unsecured basis, a court may authorize such debtor to obtain credit or incur debt that is entitled to super-priority administrative expense status, secured by a senior lien on unencumbered property or secured by a junior lien on encumbered property. *See* 11 U.S.C. § 364(c). Under section 364 of the Bankruptcy Code, courts also may authorize postpetition credit secured by a senior or equal lien

on encumbered property if the debtor cannot obtain credit elsewhere and the interests of existing lienholders are adequately protected. *See* 11 U.S.C. § 364(d)(1).

20. In connection with the ADL Petition, the Debtors and ADL knew that ADL would need the benefits of postpetition financing. Given the Debtors' current capital structure, the already extensively negotiated DIP Facilities, and ADL's need for continued financial support, the Debtors, in their business judgment, determined that the only prudent path was for ADL to become a party to the Postpetition Documents. Under the circumstances, the Debtors respectfully submit that allowing the Debtors to enter into the Second Amendment, thereby joining ADL as a party to the already court-approved Postpetition Documents and Final Financing Order, is in the best interest of the Debtors' estates and their creditors.

**II.     The Debtors Have Exercised Their Business Judgment in Entering Into the Second Amendment and the Terms of the Second Amendment Are Fair, Reasonable, and Adequate Under the Circumstances.**

21. A debtor's decision to enter into a postpetition lending facility under section 364 of the Bankruptcy Code is governed by the business judgment standard. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest."); *see also In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of postpetition financing requires, *inter alia*, an exercise of "sound and reasonable business judgment."); *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivable facility and asset based facility were approved because they "reflect[ed] sound and prudent business judgment . . . [were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors.").

22. Bankruptcy courts routinely accept a debtor's business judgment on many business decisions, including the decision to borrow money. *See*, *e.g.*, *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("[b]usiness judgments should be left to the board room and not to this Court"). Further, one court has noted that "[m]ore exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

23. Bankruptcy courts generally will defer to a debtor in possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *See In re Curlew Valley Assocs.*, 14 B.R. 506, 511–13 (Bankr. D. Utah 1981); *see also In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving interim loan, receivables facility and asset-based facility based upon prudent business judgment of the debtor). Bankruptcy courts generally will not second-guess a debtor in possession's business decisions involving "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *Curlew Valley*, 14 B.R. at 513–14.

24. In considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 365 (W.D. Mich. 1986) (a debtor may have to enter into hard bargains to acquire funds).

25. The Debtors have exercised sound business judgment in entering into the Second Amendment. The terms and conditions of the Second Amendment were negotiated in good faith and at arm's length among the parties. Further, the Second Amendment does not provide additional amounts of postpetition funding, fees, or priming liens. As such, authorizing entry into, and approving the terms of, the Second Amendment will not prejudice or harm the Debtors' creditors or other parties-in-interest.

26. Moreover, as previously described, the Debtors filed the ADL Petition on January 26, 2018, sixteen days after the Original Debtors filed their chapter 11 petitions. If ADL had filed a chapter 11 petition on the same day as the Original Debtors, ADL would have been a party to the Postpetition Documents. Additionally, as part of these chapter 11 cases, ADL benefits from the postpetition financing provided in the Postpetition Documents.

27. For the foregoing reasons, the Debtors submit that allowing the Debtors to enter into the Second Amendment is fair, reasonable, and appropriate under the circumstances of these chapter 11 cases.

## Request for Waiver of Stay

28. The Debtors believe an efficient and expeditious approval and implementation of the Second Amendment is in the best interests of their creditors and other parties in interest, including patients. Accordingly, the Debtors seek waiver of the 14-day stay of orders authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

29. The Debtors have provided notice of this Motion to: (i) the Office of the United States Trustee; (ii) the Internal Revenue Service; (iii) the Securities and Exchange Commission; (iv) the Delaware Secretary of State; (v) the Delaware Secretary of the Treasury; (vi) the Debtors' twenty (20) largest unsecured creditors; (vii) counsel to Wells Fargo Bank, N.A., as

administrative agent to the Prepetition and Postpetition lenders; (viii) counsel to Cyprium Investors IV AIV I LP; and (ix) all parties requesting notice pursuant to Bankruptcy Rule 2002 In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

### No Prior Request

30. No prior motion for the relief requested herein has been made to this or any other court.

### Conclusion

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

| | |
|---|---|
| Dated: March 2, 2018<br>Wilmington, DE | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>*/s/ Matthew O. Talmo*<br>Robert J. Dehney (No. 3578)<br>Curtis S. Miller (No. 4583)<br>Matthew O. Talmo (No. 6333)<br>1201 N. Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware  19899-1347<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br>rdehney@mnat.com<br>cmiller@mnat.com<br>mtalmo@mnat.com<br><br>   - and -<br><br>NEAL, GERBER & EISENBERG LLP<br>Mark A. Berkoff (admitted *pro hac vice*)<br>Nicholas M. Miller (admitted *pro hac vice*)<br>Thomas C. Wolford (admitted *pro hac vice*)<br>Two North LaSalle Street, Suite 1700<br>Chicago, Illinois  60602<br>Telephone:  (312) 269-8000<br>Facsimile:   (312) 269-1747 |

mberkoff@nge.com
nmiller@nge.com
twolford@nge.com

*Counsel to the Debtors and
Debtors in Possession*