# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HOBBICO, INC., *et al.*,[1] | Case No. 18-10055 (KG) |
| Debtors. | Jointly Administered |
| | Hearing Date: March 27, 2018 at 9:00 a.m. |
| | Obj. Deadline: March 26, 2018 at 12:00 p.m. |

## DEBTORS' NOTICE OF STALKING HORSE AGREEMENT
## AND BID PROTECTIONS FOR ESTES-COX LOT

**PLEASE TAKE NOTICE** that on March 22, 2018, Estes-Cox Corp., a Delaware corporation ("Seller"), one of the above-captioned debtors and debtors in possession (collectively, the "Debtors") entered into an Asset Purchase Agreement (the "Stalking Horse Agreement") with Estes Industries, LLC, a Delaware limited liability company (the "Stalking Horse Buyer").  A copy of the Stalking Horse Agreement is attached hereto as Exhibit A.[2]  The Debtors seek to sell substantially all of the assets of Seller (the "Acquired Assets"), to the Stalking Horse Buyer or such other successful bidder at an auction (in either case, the "Prevailing Purchaser") free and clear of liens, claims, encumbrances, and other interests pursuant to 11 U.S.C. § 363, except as expressly set forth in (a) the Stalking Horse Agreement or (b) the purchase agreement with a different Prevailing Purchaser.

**PLEASE TAKE FURTHER NOTICE** that on March 14, 2018, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Hobbico, Inc. (9545); Arrma Durango Ltd; Axial R/C Inc. (0233); Estes-Cox Corp. (2196); Great Planes Model Manufacturing, Inc. (5259); Revell Inc. (8545); Tower Hobbies, Inc. (5185); and United Model, Inc. (5302).  The Debtors' headquarters are located at 2904 Research Road, Champaign, Illinois 61822.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Stalking Horse Agreement or the Bidding Procedures, as applicable, and to the extent of any inconsistency, the definitions in the Stalking Horse Agreement shall govern.

27604848.3

[Dkt. No. 243] (the "Bidding Procedures Order") approving the bidding procedures (the "Bidding Procedures") which, among other things, established the key dates, times, and procedures related to the sale.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to paragraph 22 of the Bidding Procedures Order, the material terms of the Stalking Horse Agreement are as follows:[3]

(a) **Purchaser**: Estes Industries, LLC, a Delaware limited liability company.

(b) **Purchase Price**: Section 2.5 of the Stalking Horse Agreement provides that the Stalking Horse Buyer shall (a) pay to Seller the amount equal to $6,000,000.00, plus the Prepaid Expense Amount, plus a *pro rata* amount of accrued real estate taxes, and (b) assume the Assumed Liabilities.

(c) **Deposit**: Section 2.6 of the Stalking Horse Agreement provides that the Stalking Horse Buyer shall deposit $300,000.00 within (3) Business Days of the execution of the Stalking Horse Agreement.

(d) **Closing Date**: Section 3.1 of the Stalking Horse Agreement provides that the closing of the sale shall take place on or before April 13, 2018 at a location to be specified by Seller.

(e) **Closing Conditions**: In addition to customary closing conditions, including Bankruptcy Court approval, the obligation of the Stalking Horse Purchaser to consummate the transactions contemplated by the Stalking Horse Agreement is subject to the satisfaction of, among others, the following conditions as set forth in Section 3.3: (i) no breach of representations and warranties; (ii) no breach of covenants; (iii) delivery of all duly executed and notarized, as applicable, instruments or documents, including, without limitation, a patent assignment, a general trademark assignment, domain name assignment, a bill of sale, and certificates of title; (iv) delivery of duly executed and acknowledged quitclaim deeds in respect of the owned Real Property; (v) assumption and assignment of the Assigned Contracts having been authorized by the Bankruptcy Court; (vi) execution and delivery of the Transition Services Agreement; and (vii) no Material Adverse Change having occurred.

(f) **Termination**: Section 7.1 of the Stalking Horse Agreement provides for the termination thereof prior to Closing, (i) by mutual consent of the Stalking Horse Buyer and Seller; (ii) by the Stalking Horse Buyer or Seller in the event the Closing has not occurred on or before April 30, 2018; (iii) by Seller if, incident to the Bid Procedures Order, Seller accepts and closes on a competing bid for the

---

[3] The following summary is qualified in its entirety by reference to the provisions of the Stalking Horse Agreement. In the event of any inconsistencies between the provisions of the Stalking Horse Agreement and the terms herein, the terms of the Stalking Horse Agreement shall govern.

purchase of all or part of the Acquired Assets; (iv) by the Stalking Horse Buyer if (1) the Debtors shall file a motion to sell all or part of the Acquired Assets to a third party other than the Stalking Horse Buyer and shall thereafter consummate such sale, (2) the chapter 11 cases are converted to cases under Chapter 7 of the Bankruptcy Code, or (3) the Bankruptcy Court does not, on or before April 5, 2018, enter an order approving the Break-Up Fee set forth in Section 6.4 of the Stalking Horse Agreement and payment of such Break-Up fee upon the conditions set forth in that section; or (v) by the non-breaching party upon a material breach of any provision of the Stalking Horse Agreement or the Transition Services Agreement (including without limitation the Stalking Horse Buyer's failure to pay any amount due from the Stalking Horse Buyer under the Transition Services Agreement), provided that such breach has not been waived by the non-breaching party and has continued after notice to the breaching party by the non-breaching party without cure for a period of five (5) Business Days (provided that the non-breaching party shall have an immediate right to terminate if the breaching party has willfully breached any provision of the Stalking Horse Agreement or the Transition Services Agreement, which breach is not cured).

(g) **Avoidance Actions**: Sections 1.1 and 2.2 of the Stalking Horse Agreement provide that Avoidance Actions (except for those Avoidance Actions against (i) past and present vendors or customers which are counterparties to Assigned Contracts, or (ii) Transferred Employees) are Excluded Assets.

(h) **Transferred Employees**: Section 6.7 of the Stalking Horse Agreement provides that the Stalking Horse Buyer shall designate Transferred Employees to whom it will offer employment.

(i) **Record Retention**: Section 6.5 of the Stalking Horse Agreement provides that the Stalking Horse Buyer shall grant Seller, among others, reasonable access to the books and records transferred to the Stalking Horse Buyer, during regular business hours and upon reasonable notice, for the purpose of performing the duties necessary for the liquidation of Seller's estate, through and including the second (2nd) anniversary of the Closing Date.

(j) **Bid Protections**: Section 6.4 of the Stalking Horse Agreement provides for the payment of a Break-Up Fee of $180,000.00 in the event that certain events occur preventing the Stalking Horse Buyer from purchasing the Acquired Assets (the "Bid Protections"). The Debtors have determined in their discretion and after consultation with the appropriate parties that such Bid Protections are necessary and appropriate.

**PLEASE TAKE FURTHER NOTICE** that any objections to the Bid Protections must be in writing, comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, state with specificity the legal factual bases thereof, and be filed with the Clerk of the Bankruptcy Court,

824 Market Street, Third Floor, Wilmington, Delaware 19801, and served upon the undersigned, so as to be received on or before **12:00 p.m., prevailing Eastern Time, on March 26, 2018.**

**PLEASE TAKE FURTHER NOTICE** that at the same time, you must also serve a copy of the objection upon:  (a) the Debtors, c/o Hobbico, Inc., 2904 Research Road, Champaign, Illinois 61822; (b) counsel for the Debtors, Neal, Gerber & Eisenberg LLP, Two North LaSalle Street, Suite 1700, Chicago, Illinois 60602, Attn: Mark A. Berkoff, mberkoff@nge.com; Nicholas M. Miller, nmiller@nge.com; and Thomas C. Wolford, twolford@nge.com; (c) co-counsel for the Debtors, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899, Attn: Robert J. Dehney, rdehney@mnat.com; Curtis S. Miller, cmiller@mnat.com; and Matthew O. Talmo, mtalmo@mnat.com; (d) counsel to Wells Fargo, N.A., as Administrative Agent for the Postpetition Lenders, Goldberg Kohn Ltd., 55 E. Monroe St., Suite 3300, Chicago, Illinois 60603, Attn: Zachary J. Garrett, Zachary.garrett@goldbergkohn.com; and Prisca Kim, Prisca.kim@goldbergkohn.com; (e) counsel to the Official Committee of Unsecured Creditors, Cullen and Dykman LLP, One Riverfront Plaza, Newark, New Jersey 07102, Attn: S. Jason Teele, steele@cullenanddykman.com; Nichole Stefanelli, nstefanelli@cullenanddykman.com; Michelle McMahon, mmcmahon@cullenanddykman.com; and Bonnie Pollack, bpollack@cullenanddykman.com; (f) co-counsel to the Official Committee of Unsecured Creditors, Whiteford, Taylor & Preston LLC, 405 North King Street, Suite 500, Wilmington, Delaware 19801, Attn: Christopher Samis, csamis@wtplaw.com; L. Katherine Good, kgood@wtplaw.com; and Kevin Shaw, kshaw@wtplaw.com; and (g) the office of the United States Trustee for the District of Delaware, Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Richard L. Schepacarter.

**PLEASE TAKE FURTHER NOTICE** THAT, PURSUANT TO THE TERMS OF THE BIDDING PROCEDURES ORDER, IF NO OBJECTION TO THE BID PROTECTIONS IS TIMELY FILED AND SERVED, THE BID PROTECTIONS SHALL BE DEEMED AUTHORIZED AND APPROVED WITHOUT FURTHER ORDER, NOTICE OR HEARING.

**PLEASE TAKE FURTHER NOTICE** THAT IF AN OBJECTION IS PROPERLY FILED AND SERVED IN ACCORDANCE WITH THE ABOVE PROCEDURES, A HEARING WILL BE HELD ON **MARCH 27, 2018 AT 9:00 a..m. PREVAILING EASTERN TIME** BEFORE THE HONORABLE KEVIN GROSS, UNITED STATES BANKRUPTCY JUDGE FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, COURT ROOM #3, 6TH FLOOR, WILMINGTON, DELAWARE 19801.  ONLY OBJECTIONS MADE IN WRITING AND TIMELY FILED WILL BE CONSIDERED BY THE BANKRUPTCY COURT AT SUCH HEARING.

*[Remainder of page intentionally left blank]*

| | |
|---|---|
| Dated: March 23, 2018<br>Wilmington, Delaware | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Matthew O. Talmo*<br>Robert J. Dehney (No. 3578)<br>Curtis Miller (No. 4583)<br>Matthew O. Talmo (No. 6333)<br>1201 N. Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br>rdehney@mnat.com<br>cmiller@mnat.com<br>mtalmo@mnat.com<br><br>- and –<br><br>NEAL, GERBER & EISENBERG LLP<br>Mark A. Berkoff (admitted *pro hac vice*)<br>Nicholas M. Miller (admitted *pro hac vice*)<br>Thomas C. Wolford (admitted *pro hac vice*)<br>Two North LaSalle Street, Suite 1700<br>Chicago, Illinois  60602<br>Telephone:  (312) 269-8000<br>Facsimile:   (312) 269-1747<br>mberkoff@nge.com<br>nmiller@nge.com<br>twolford@nge.com<br><br>*Co-Counsel to the Debtors and Debtors in Possession* |

27604848.3