## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HOBBICO, INC., *et al.*,[1] | Case No. 18-10055 (KG) |
| Debtors. | Jointly Administered |
| | **Objection Deadline (Requested):** May 16, 2018 at 4:00 p.m. (ET) |
| | **Hearing Date (Requested):** May 17, 2018 at 10:00 a.m. (ET) |

### DEBTORS' MOTION FOR ENTRY OF AN
### ORDER (I) AUTHORIZING THE SALE OF ASSETS,
### FREE AND CLEAR OF ALL LIENS, CLAIMS, LIABILITIES,
### ENCUMBRANCES, AND INTERESTS OF ANY KIND OR NATURE
### WHATSOEVER, TO MT ACQUISITIONS, LLC, (II) APPROVING
### ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACT(S),
### (III) APPROVING PROCEDURES FOR THE SALE OR ABANDONMENT OF
### MISCELLANEOUS ASSETS, AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), hereby move the Court (the "Motion") pursuant to sections 105(a), 363, 365, and 554(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order (the "Proposed Order"):  (i) authorizing the sale (the "Sale") of certain assets (the "GPMM Assets" or the "Acquired Assets") of Debtors Hobbico, Inc. and Great Planes Model Manufacturing, Inc. (collectively, the "Sellers") to MT Acquisitions, LLC,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Hobbico, Inc. (9545); Arrma Durango Ltd; Axial R/C Inc. (0233); Estes-Cox Corp. (2196); Great Planes Model Manufacturing, Inc. (5259); Revell Inc. (8545); Tower Hobbies, Inc. (5185); and United Model, Inc. (5302).  The Debtors' headquarters are located at 2904 Research Road, Champaign, Illinois 61822.

an Illinois limited liability company ("MT" or "Buyer"; and, together with the Sellers, the "Parties") free and clear of any and all liens, claims, liabilities, encumbrances and interests of any kind or nature whatsoever; (ii) authorizing and establishing procedures for the sale or abandonment of miscellaneous assets and (iii) granting related relief.

### Jurisdiction

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      The bases for the relief requested herein are sections 105(a), 363 and 554(a) of the Bankruptcy Code, Bankruptcy Rule 6004 and Local Rule 6004-1.

### Background

**A.      General Background**

4.      On January 10, 2018 (the "Petition Date"), the Debtors other than Arrma Durango Limited each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtors other than Arrma Durango Limited also jointly filed motions or applications seeking certain typical "first day" relief. Debtor Arrma Durango Limited filed its voluntary petition and similar "first day" relief on January 26, 2018.

5.      The Debtors are continuing in possession of their respective properties and are continuing to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No request has been made for the appointment of a trustee or examiner.   On January 22, 2018, the United States Trustee appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code.

7.      On February 14, 2018, the Court entered *Order Authorizing Debtors to: (A) Use Cash Collateral on a Final Basis; (B) Incur Postpetition Debt on a Final Basis; and (C) Grant Adequate Protection and Provide Security and Other Relief to Wells Fargo Bank, National Association, As Agent, and the Other Secured Parties* (D.I. 162) (the "DIP Financing Order"), pursuant to which the Court, among other things, authorized the Debtors to enter into that certain Debtor-in-Possession Credit Agreement dated as of January 12, 2018.

8.      A full description of the Debtors' business, corporate structure, prepetition indebtedness, and events leading to these Cases is set forth in the Amended *Declaration of Tom S. O'Donoghue, Jr. in Support of Chapter 11 Petitions and First Day Motions* (D.I. 34) (the "O'Donoghue Declaration") and *Supplemental Declaration of Tom S. O'Donoghue, Jr. in Support of Supplemental Joint Administration Motions* (Case No. 18-10158, D.I  4).

**B.      Previous Sales of the Debtors' Assets**

9.      As set forth in the O'Donoghue Declaration, the Debtors retained an investment banker and have been marketing substantially all of their assets for sale as a going concern since late 2017.

10.      Consistent with these efforts, on February 26, 2018, the Debtors filed *Debtors' Motion for (I) An Order (A) Establishing Bidding Procedures for the Sale of All, or Substantially*

*All, of the Debtors' Assets; (B) Approving Potential Bid Protections; (C) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases; (D) Approving Form and Manner of the Sale, Cure and Other Notices; and (E) Scheduling an Auction and a Hearing to Consider the Approval of the Sale; (II) An Order (A) Approving the Sale of the Debtors' Assets Free and Clear of Claims, Liens and Encumbrances; and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Certain Related Relief* (D.I. 192) (the "Bidding Procedures Motion").

11.     On March 14, 2018, the Court entered *Order (A) Establishing Bidding Procedures for the Sale of All, or Substantially All, of the Debtors' Assets; (B) Approving Bid Protection Procedures; (C) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases; (D) Approving Form and Manner of the Sale, Cure and Other Notices; and (E) Scheduling an Auction and a Hearing to Consider the Approval of the Sale* (D.I. 243) (the "Bidding Procedures Order").

12.     In accordance with the Bidding Procedures Order, an auction (the "Auction") was held on March 28, 2018, and continued and concluded on April 12, 2018.  As a result of the Auction, the Debtors sold, and the Court entered orders (collectively, the "Sale Orders") approving the sale of, the Hobby Business Lot, the Estes-Cox Lot, and the Global Revell Lot (each as defined in the Bidding Procedures Order) (see D.I. 316, 317, 361).  The Debtors already have closed on the sale of the Hobby Business Lot and the Estes-Cox Lot and anticipate closing on the sale of the Global Revell Lot in the near future.  However, notwithstanding their extensive

4

marketing efforts, the Debtors were unable to sell the GPMM Assets in connection with the Auction.[2]

13.     Nonetheless, the Debtors continued to pursue a sale of the GPMM Assets in an effort to maximize recoveries for the estate.  As a result, on May 8, 2018, the Parties executed the Asset Purchase Agreement (the "APA")[3] attached as **Exhibit 1** to **Exhibit A** hereto, which provides for the sale of the GPMM Assets and the potential assumption and assignment of certain related contracts and leases to the Buyer.

14.     Although the Debtors have made great progress in their efforts to monetize their assets (including the GPMM Assets that are the subject of this Motion), the Debtors still have not secured agreements for the sale of all estate property.  Specifically, after the Debtors close on any sale of the GPMM Assets approved by this Court, the estate still will own certain miscellaneous assets (collectively, the "Miscellaneous Assets") that have relatively little or no value to the estate after taking into account the costs of liquidation.[4]

### Relief Requested

15.     By this Motion, the Debtors respectfully request the entry of the Proposed Order: (i) authorizing the Sale, free and clear of any and all liens, claims, liabilities, encumbrances and interests of any kind or nature whatsoever; (ii) authorizing and establishing procedures for the sale or abandonment of the Miscellaneous Assets; and (iii) granting certain related relief.

---

[2]   As set forth in the APA, the GPMM Assets consist of primarily (a) wood inventory and certain equipment of Debtor Great Planes Model Manufacturing and (b) certain real estate located in Urbana, Illinois.

[3]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the APA.

[4]   The Miscellaneous Assets include, among other things, racking, equipment, inventory, tooling, and other property that has not yet been sold through the sale efforts described herein.

27832590.5

## Summary

### A.    The Sale

16.    The following chart represents the Debtors' compliance with Local Rule 6004-1(b)(iv):

| **Term** | **Description**[5] |
|---|---|
| **Sale to Insider**<br>*Local Rule 6004-1(b)(iv)(A)* | N/A — the Buyer is not an insider. |
| **Agreements with Management**<br>*Local Rule 6004-1(b)(iv)(B)* | N/A — the APA does not provide for future employment of any of the Debtors' employees, and the Debtors are unaware of any discussions or agreements on the part of the Buyer with respect thereto. |
| **Releases**<br>*Local Rule 6004-1(b)(iv)(C)* | Paragraphs 13 and 14 of the Proposed Order provides that Sellers and Buyer will grant mutual releases to one another and various related entities for, among other things, claims based on the APA and ownership, use or status of the GPMM Assets. |
| **Private Sale/No Competitive Bidding**<br>*Local Rule 6004-1(b)(iv)(D)* | As noted above, an auction already has been unsuccessfully concluded for the Acquired Assets, and the proposed Sale represents a continuation of the Debtors' marketing efforts for the Acquired Assets.  The Debtors have not agreed to deal with the Buyer exclusively or limit shopping of the Assets in any way. |
| **Closing and Other Deadlines**<br>*Local Rule 6004-1(b)(iv)(E)* | The Sellers are required to seek expedited approval of the Sale within 7 days following the filing of this Motion.  *See* APA § 6.1(c). |
| **Good Faith Deposit**<br>*Local Rule 6004-1(b)(iv)(F)* | $55,700.  *See* APA § 2.7.  The Deposit shall be forfeited to Sellers if Sellers terminate the APA due to a breach by the Buyer of certain of its agreements, covenants, representations or warranties contained in the APA, which breach is not cured within a specified time period. |

---

[5]    The following summary is qualified in its entirety by reference to the provisions of the APA. In the event of any inconsistencies between the provisions of the APA and the terms herein, the terms of the APA shall govern.

27832590.5

| **Term** | **Description[5]** |
|---|---|
| **Interim Arrangements with Proposed Buyer** *Local Rule 6004-1(b)(iv)(G)* | N/A |
| **Use of Proceeds** *Local Rule 6004-1(b)(iv)(H)* | Paragraph 31 of the Proposed Order provides for distribution of the Sale proceeds in a manner consistent with the Final DIP Order. |
| **Tax Exemption** *Local Rule 6004-1(b)(iv)(I)* | N/A |
| **Record Retention** *Local Rule 6004-1(b)(iv)(J)* | The Buyer shall grant Sellers, each Trustee, and their respective representatives reasonable access to the books and records transferred to Buyer for the purpose of allowing such Seller to perform the duties necessary for the liquidation of each Debtor's estate. *See* APA § 6.2(b). |
| **Sale of Avoidance Actions** *Local Rule 6004-1(b)(iv)(K)* | Avoidance Actions are excluded from the Acquired Assets, except for Avoidance Actions against (i) past and present trade vendors, licensors, distributors or customers of any Seller related to the Acquired Assets, and (ii) Avoidance Actions against Buyer or its Related Persons, in each case exclusive of (1) any Avoidance Actions or other Causes of Action against Persons who were officers or directors of any Seller or who were "insiders" of any Seller, and (2) any Causes of Action which are Commercial Tort Claims. *See* APA §§ 1.1 and 2.1(e). |
| **Successor Liability** *Local Rule 6004-1(b)(iv)(L)* | The Buyer will not be responsible for any Liabilities arising under any theory of successor liability. *See* APA § 2.3(s). |
| **Sale Free and Clear** *Local Rule 6004-1(b)(iv)(M)* | The sale of the Acquired Assets will be free and clear of all Interests (other than Permitted Liens). *See* APA § 2.1; Proposed Order § 21. |
| **Credit Bid** *Local Rule 6004-1(b)(iv)(N)* | N/A |
| **Relief from Bankruptcy Rule 6004(h)** *Local Rule 6004-1(b)(iv)(O)* | The Debtors request that, upon entry of the Sale Order, the Court waive the fourteen day stay requirement of Bankruptcy Rule 6004(h). *See* Proposed Order § 26. |

## B. Miscellaneous Sale and Abandonment Procedures

17. As described, the Debtors are in the process of winding down their estates and already have sold a substantial portion of their assets. Following the sale of the GPMM Assets,

27832590.5

the remaining Miscellaneous Assets will be unnecessary for any continued operations or for the administration of the Debtors' estates.

18.     Given the Miscellaneous Assets' relatively limited value in relation to the Debtors' inventory and current operations, the Debtors submit that selling the Miscellaneous Assets through efficient procedures will reduce costs and other administrative expenses that otherwise would be incurred seeking authority to sell such assets through separate motions. Therefore, the Debtors propose the procedures set forth below to streamline the sale, transfer and disposition process and ensure that parties in interest receive adequate notice of such sales. The proposed procedures described herein will allow the Debtors to sell or dispose of the Miscellaneous Assets in an efficient and cost-effective manner and are consistent with the customary procedures approved by this and other courts.

19.     The Debtors propose that each Miscellaneous Asset sale be for the highest and best offer received, taking into consideration the exigencies and circumstances in each such sale, under the following procedures (the "Miscellaneous Asset Sale Procedures"):

    a.  For any asset sale with a purchase price less than $200,000:

        i.  The Debtors shall file on the docket in these Cases a notice (a "Miscellaneous Sale Notice") which will be served on (i) any known affected creditor asserting a Lien on any assets subject to such sale; (ii) counsel to the Prepetition Agent and Postpetition Agent for the Prepetition Lenders and the Postpetition Lenders (as such terms are defined in the DIP Financing Order); (iii) counsel to the Committee; (iv) the U.S. Trustee; (v) counsel to Cyprium Investors IV AIV I LP; (vi) counsel to GreatBanc Trust Company, trustee of the Hobbico, Inc. Employee Stock Ownership Plan; and (vii) the general service list established in these Cases pursuant to Bankruptcy Rule 2002 (the "Notice Parties"). Such notice shall contain: (i) a general description of the Miscellaneous Assets subject to the sale; (ii) the proposed purchaser of the Miscellaneous Assets; (iii) any commissions to be paid to third parties used to sell or auction the Miscellaneous

Assets; (iv) a summary of the material terms of the sale; and (v) instructions consistent with the terms described herein regarding the procedures to assert objections to the proposed sale.

    ii.    If none of the Notice Parties file or serve upon counsel to the Debtors a written objection (including by email) within two (2) business days of receipt of such Miscellaneous Sale Notice, then the Debtors may immediately consummate the transaction, including making any disclosed payments to third-party brokers or auctioneers.  If an objection is filed or served within such period that cannot be resolved, such assets shall not be sold except upon further order of this Court after notice and a hearing.

    b.    For any asset sale(s) to a single buyer or group of related buyers with an aggregate selling price greater than $200,000, the Debtors shall file a separate motion seeking approval from the Court with respect to such sale(s).

    c.    Nothing in the foregoing procedures will prevent the Debtors, in their sole discretion, from seeking this Court's approval at any time of any proposed transaction (regardless of value) upon notice and a hearing.

20.    To the extent any Miscellaneous Assets cannot be sold at a price greater than the cost of liquidating such assets, the Debtors seek authority to abandon such Miscellaneous Assets in accordance with the following procedures (the "<u>Miscellaneous Asset Abandonment Procedures</u>" and, together with the Miscellaneous Asset Sale Procedures, the "<u>Miscellaneous Asset Procedures</u>"):

    a.    For any Miscellaneous Assets, regardless of value, that the Debtors seek to abandon pursuant to these procedures:

    i.    The Debtors shall file on the docket in these Cases a notice (an "<u>Abandonment Notice</u>") which shall be served on the Notice Parties.  Such Abandonment Notice shall contain (i) a general description of the Miscellaneous Assets to be abandoned and (ii) a summary of the Debtors' reasons for such abandonment.

    ii.    If none of the Notice Parties file or serve upon counsel to the Debtors a written objection (including by email) within two (2) business days of receipt of such Abandonment Notice, then the Debtors may immediately abandon the assets.  If an objection is filed or served within such period that cannot be resolved, such

assets shall not be abandoned except upon further order of this Court after notice and a hearing.

**Basis for Relief**

**I.    SALE OF GPMM ASSETS TO MT ACQUISITION, LLC**

**A.    The Sale of the GPMM Assets is Within the Sound Business Judgment of the Debtors and Should be Approved**

21.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, of the estate." 11 U.S.C. § 363(b)(1).

22.    Although section 363 of the Bankruptcy Code does not set forth a standard for determining when a sale or disposition of property of the estate should be authorized, courts in the Third Circuit generally authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See, e.g.*, *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

23.    The sale of estate assets outside the ordinary course of business is appropriate if: (a) there is a sound business purpose for the sale; (b) the debtor has provided interested parties with adequate and reasonable notice; (c) the proposed sale price is fair and reasonable; and (d) the purchaser has acted in good faith. *See, e.g.*, *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986); *In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

24.    A debtor's showing of a sound business purpose need not be unduly exhaustive; rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be

found where such a sale is necessary to preserve and enhance the value of the assets for the debtor's estate, its creditors, or interest holders. *See, e.g.*, *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (stating that, in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand").

25.    Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code.  Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper.  *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993).  Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets.  *See, e.g.*, *In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that a bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").

26.    Here, the Debtors have a sound business justification for selling the GPMM Assets.  The GPMM Assets were extensively and aggressively marketed to strategic parties over a period of several months, and the Debtors have determined that the proposal from MT will result in the highest recovery for these assets for the estates.  The Sale pursuant to section 363 of

27832590.5

the Bankruptcy Code will enable the expeditious transfer of the GPMM Assets, an approach necessary to maximize and preserve the value of such assets. The Debtors' major creditor constituents and the United States Trustee have been informed of the ongoing sale efforts, and the Debtors are unaware of any objections to the Sale. Accordingly, the Debtors believe that the Agreement comprises the best offer for the GPMM Assets, is appropriate in the Debtors' business judgment, and should therefore be approved.

### B.    Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Is Appropriate

27.    The Debtors request authority under section 365 of the Bankruptcy Code to assume and assign the designated executory contracts and/or unexpired leases associated with the GPMM Assets to the Buyer. The Debtors further request that the Proposed Order provide that the assigned executory contracts and/or unexpired leases will be transferred to, and remain in full force and effect for the benefit of, the Buyer notwithstanding any provisions in such assigned contracts and/or leases, including those described in Bankruptcy Code sections 365(b)(2), (f)(1) and (f)(3), that prohibit such assignments.

28.    The Debtors may, subject to Court approval, assume and assign executory contracts and unexpired leases under Bankruptcy Code section 365. 11 U.S.C. § 365(a). Courts routinely approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that a debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See, e.g., In re Fleming Co. Inc.,* 499 F.3d 300, 305 (3d Cir. 2007); *Cinicola v. Scharffeberger,* 248 F.3d 110, 120 (3d Cir. 2001); *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.),* 209 F.3d 291, 298 (3d Cir. 2000); *In re Market Square Inn, Inc.,* 978 F.2d 116, 121 (3d Cir. 1992); *Sharon Steel National Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.),* 872 F.2d 36, 39-40 (3d Cir. 1989);

12

*In re NII Holdings, Inc.*, Case No. 14-12611 (SCC) (Bankr. S.D.N.Y. Apr. 20, 2015); *In re Delia's, Inc.*, Case No. 14-23678 (RDD) (Bankr. S.D.N.Y. Dec. 24, 2014); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).  The assumption and assignment of the designated executory contracts and/or unexpired leases related to the GPMM Assets is an integral component of the Sale, without which the Sale would not be a viable option.

29.    Section 365(b)(1) of the Bankruptcy Code requires that, if there has been a default in a debtor's unexpired lease or executory contract, other than certain nonmonetary defaults as set forth in the statute, such unexpired lease or executory contract may not be assumed unless, at the time of the assumption, (i) such default is cured or there is adequate assurance that such default will be cured, (ii) compensation or adequate assurance of compensation is provided for any actual pecuniary loss resulting from such default and (iii) adequate assurance of future performance under the lease is provided.  11 U.S.C. § 365(b)(1)(A)-(C).

30.    The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *EBG Midtown South Corp. v. McLaren/Hart Env. Eng' g Corp. (In re Sanshoe Worldwide)*, 139 B.R. 585, 593 (S.D.N.Y. 1992); *see also In re Fleming Co. Inc.*, 499 F.3d 300, 305 (3d Cir. 2007); *Cinicola v. Scharffeberger*, 248 F.3d 110, 120 (3d Cir. 2001).

31.    As set forth above, the Debtors have provided notice to all counterparties to the executory contracts and unexpired leases of the potential assumption by the Debtors and assignment to the Buyer, along with the cure amount, if any, owing for each such contracts and/or leases according to the Debtors' books and records.[6]

---

[6]    As set forth on Schedule 2.1(d) of the APA, the Buyer seeks the assumption and assignment of only a single contract, which (a) is paid in advance, (b) is not in default, and (c) has no cure amount associated with it.

27832590.5

32.     Counterparties to such contracts and/or leases were given sufficient time to object to the proposed cure amounts, if any, set forth in the Cure Notice.  The payment of the cure amounts specified in the Proposed Order (or a different amount, either agreed to by the Debtors or ordered by this Court) will be in full and final satisfaction of all obligations to cure defaults and compensate the counterparties for any pecuniary losses under the applicable executory contract(s) and/or lease(s) pursuant to Bankruptcy Code section 365(b)(1), unless the Debtors determine, before the Sale Hearing, that a particular lease or contract is not truly executory, and does not need to be cured to transfer the GPMM Assets to the Buyer.

33.     Bankruptcy Code section 365(f)(2)(B) states that a debtor may assign its unexpired leases and executory contracts if, *inter alia,* the assignee provides "adequate assurance of future performance."  11 U.S.C. § 365(f)(2)(B).  If necessary, the Buyer will submit, among other things, evidence of the ability to provide adequate assurance of future performance under the applicable contracts or leases.

34.     Any assumption and assignment of an assigned contract and/or lease will be subject to all of the provisions of such contract and/or lease, to the extent required by applicable law and in accordance with applicable provisions of the Bankruptcy Code.  The Buyer is financially able and prepared to undertake all of the relevant obligations under the assigned contracts and/or leases.  The Debtors, together with the Buyer, will establish, as necessary, at the sale hearing, the requisite adequate assurance of future performance pursuant to Bankruptcy Code section 365 with respect to the potential assumption and assignment of the applicable assigned contracts and/or leases.  Consequently, assumption and assignment of the assigned executory contracts and/or leases in connection with the Sale of the Assets is appropriate under the circumstances.

### C.    Notice of the Sale Hearing is Adequate and Appropriate

35.    In accordance with section 363(b) of the Bankruptcy Code, all parties in interest as described herein will receive adequate notice of the sale proposed herein and will be provided with an opportunity to be heard.[7]    Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time and place of the sale hearing, and the deadline for filing any objections to the relief requested herein.    The Debtors have provided (or will timely provide) all the requisite information.    Accordingly, the Debtors submit that notice of the Motion and proposed Sale Order is adequate and appropriate under section 363(b) and Bankruptcy Rule 2002(c).

### D.    The Sale of the GPMM Assets Has Been Proposed in Good Faith and Without Collusion

36.    The Debtors have proposed the sale of the GPMM Assets in good faith, and have negotiated with MT in good faith, at arm's length and without collusion with respect thereto.

37.    Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

38.    Section 363(m) of the Bankruptcy Code thus protects a buyer of assets from the risk that it will lose its interest in the purchased assets if the order approving the sale is reversed on appeal, provided that the buyer purchased the assets in "good faith."    Although the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that

---

[7]    Contemporaneously herewith, the Debtors have filed a motion to expedite the hearing on this Motion, consistent with the Seller's obligation under section 6.1(a) of the APA.

where there is a lack of such integrity, a good faith finding may not be made.  *See, e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 (3d Cir. 1986) ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.").  Similarly, section 363(n) of the Bankruptcy Code allows a debtor to, among other things, avoid a transaction "if the sale price was controlled by an agreement among potential bidders at such sale. . . ." 11 U.S.C. § 363(n).

39.     The Debtors submit that MT is entitled to the protections of section 363(m) of the Bankruptcy Code and a finding that there was no fraud or collusion in satisfaction of section 363(n) of the Bankruptcy Code.  The Debtors and MT negotiated the APA at arm's length and without collusion after a fair marketing and sale process resulted in no better offer for the Assets.  Through their sale process, the Debtors provided ample opportunity for interested parties to formulate proposals for the GPMM Assets and other assets and determined that the proposal from MT was an acceptable offer.  Accordingly, given that the Debtors' good faith, arm's length efforts and the absence of any fraud or collusion, the Debtors submit that MT is entitled to the protections of section 363(m) of the Bankruptcy Code and an appropriate finding to preclude avoidance under section 363(n) of the Bankruptcy Code.

### E.     Approval to Sell the GPMM Assets Free and Clear of Liens, Claims, Liabilities, Encumbrances and Interests of Any Kind or Nature Whatsoever

40.     The Debtors request approval to sell the GPMM Assets to MT free and clear of any and all liens, claims, liabilities, encumbrances and interests of any kind or nature whatsoever, in accordance with section 363(f) of the Bankruptcy Code.

16

41.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell estate property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)     such interest is in *bona fide* dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

42.     Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of a sale of assets free and clear of all liens, claims, encumbrances and other interests.  *See, e.g.*, *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002); *see also Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 257 (3d Cir. 2000) (discussing how section 363(f) authorizes the sale of a debtor's assets free and clear of all liens, claims, encumbrances and other interests if "any one of [the] five prescribed conditions" is met).  Furthermore, courts have held that they have the equitable power to authorize sales free and clear of adverse interests that are not specifically covered by section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, 2001 WL 1820325 at *3, 6 (Bankr. D. Del. Mar. 27, 2001).

43.     The Debtors submit that the sale of the GPMM Assets free and clear of any and all liens, claims, liabilities, encumbrances and interests of any kind or nature whatsoever satisfies the requirements of section 363(f) of the Bankruptcy Code.  The Debtors submit that any lien

that is not an assumed liability or permitted encumbrance under the APA satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code. If an entity with liens on the GPMM Assets does not consent to the proposed Sale of such assets, the Debtors intend to demonstrate at the Sale Hearing their satisfaction of the requirements of section 363(f) of the Bankruptcy Code. Alternatively, the Debtors may, subject to the consummation of the Sale and payment in full of all of the consideration under the Asset Purchase Agreements, sell the GPMM Assets that are acquired pursuant to the Asset Purchase Agreements free and clear of any other interests under section 363(f)(5) of the Bankruptcy Code because the liens on any assets sold will attach to the proceeds of the Sale in their order of priority and entities holding such interests could be compelled to accept money satisfaction in legal or equitable proceedings. Additionally, the Debtors believe that the service of this Motion will afford creditors sufficient notice of the sale of the GPMM Assets and ability to object to the extent they believe they have an affected interest.

## II.   PROCEDURES FOR THE SALE OR ABANDONMENT OF MISCELLANEOUS ASSETS

### A.   Sale of Miscellaneous Assets

44.   In addition to the Sale, the Debtors seek authority to sell the Miscellaneous Assets in accordance with the Miscellaneous Asset Sale Procedures in their sound business judgment pursuant to section 363(b)(1) of the Bankruptcy Code, in an expeditious manner to minimize depreciation of these assets. If the relief requested herein is granted, the Debtors will be able to avoid many of the unnecessary costs associated with maintaining, retaining, storing and liquidating Miscellaneous Assets that have relatively little value to the Debtors or their estates.

45.   Moreover, the Miscellaneous Asset Sale Procedures will also reduce the burden on the Court's docket while protecting the interests of all creditors with an interest in the assets

through the opportunity to object and obtain a hearing if necessary. Obtaining approval from the Court for each sale transaction would result in unnecessary administrative costs attendant to drafting, serving and filing pleadings, as well as time incurred by attorneys for appearing at Court hearings, which could significantly reduce the ultimate net value of these assets.

46.     The Debtors and their advisors have significant experience with sales such as these and are very well versed in obtaining the best sale price possible. The Miscellaneous Asset Sale Procedures set forth herein will permit the Debtors to be responsive to the needs of interested purchasers, thereby guarding against lost sales due to delay, while still providing for a review of the proposed transaction by all parties receiving notice.

47.     In order to facilitate the proposed sale transaction, the Debtors request that the Court authorize the sales of Miscellaneous Assets pursuant to this Motion be made free and clear of any and all Liens, with any such Liens to be transferred and attached to the net sale proceeds. The Debtors believe that the Miscellaneous Asset Sale Procedures satisfy the requirements of Section 363(f). If a holder of Liens does not object within the prescribed time period, such holder will be deemed to have consented to the proposed sale and the Miscellaneous Assets may then be sold free and clear of such holder's Liens.

48.     In approving the sales free and clear of Liens, the Debtors request that the Court find and hold that all purchasers of Miscellaneous Assets, in accordance with the procedures set forth herein, are entitled to the protections afforded by section 363(m) of the Bankruptcy Code. Such relief is appropriate in light of the opportunity for review and objection by the Notice Parties. The Debtors submit that any agreement reached as a result of a sale of the Miscellaneous Assets will be an arm's length transaction entitled to the protections of section 363(m).

27832590.5

B.      **Abandonment of Miscellaneous Assets**

49.      Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Courts generally give a debtor in possession great deference to its decision to abandon property. *See, e.g.*, *In re Vel Rey Props., Inc.*, 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters."). Unless certain property is harmful to the public, once a debtor has shown that it is burdensome or of inconsequential value to the estate, a court should approve the abandonment. *Id.*

50.      The Debtors expect to take all reasonable steps to sell Miscellaneous Assets not needed in its operations. The costs associated with sales of certain Miscellaneous Assets, however, may exceed any possible proceeds thereof. The inability to consummate a commercially reasonable sale of Miscellaneous Assets would indicate that these Miscellaneous Assets have no meaningful monetary value to the Debtors' estates. Accordingly, the Debtors contend that, in such circumstances, the abandonment of Miscellaneous Assets pursuant to the Miscellaneous Asset Abandonment Procedures is in the best interests of the Debtors' estates.

51.      In light of the demonstrable benefits of streamlined procedures to sell, transfer or abandon Miscellaneous Assets, courts in this district have approved similar procedures in other chapter 11 cases. *See, e.g., In re General Wireless Operations Inc. d/b/a Radioshack*, Case No. 17-10506 (BLS) (Bankr. D. Del. May 25, 2017) (approving miscellaneous asset sale procedures for sale of assets up to $250,000 and establishing abandonment procedures); *In re Malibu Lighting Corporation*, Case No. 15-12080 (KG) (Bankr. D. Del. Apr. 4, 2016 (approving miscellaneous asset sale procedures for sale of assets up to $250,000 and establishing

abandonment procedures); *In re TPOP, LLC,* Case No. 13-11831 (BLS) (Bankr. D. Del. Dec. 9, 2013) (approving miscellaneous sale procedures for sale of assets up to $250,000 and establishing abandonment procedures); *In re Overseas Shipholding Group, Inc.*, Case No. 12-20000 (PJW) (Bankr. D. Del. Aug. 26, 2013) (approving miscellaneous sale procedures for sale of assets up to $1,000,000 and establishing abandonment procedures).

### Waiver of Rules 6004(a) and (h)

52.      The Debtors also seek a waiver of any notice requirements beyond those set forth in the procedures proposed herein.  Under Rule 6004(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "Notice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with §363(b)(2) of the Code." Fed. R. Bankr. P. 6004(a).

53.      Pursuant to Bankruptcy Rule 9006 and Local Rule 9006-1(e), the Debtors are filing, concurrently herewith, a *Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 102(1) and 105 Shortening Notice Regarding Debtors' Motion for Entry of an Order (I) Authorizing the Sale of Assets, Free and Clear of All Liens, Claims, Liabilities, Encumbrances, and Interests of Any Kind or Nature Whatsoever, to MT Acquisitions, LLC (II) Approving Procedures for the Sale or Abandonment of Miscellaneous Assets, and (III) Granting Related Relief*, specifying the exigencies justifying their filing on less than 21 days' notice.  Accordingly, the Debtors submit that they have shown cause for shortened notice and that notice of the Motion and Proposed Order is adequate and appropriate under section 363(b) and Bankruptcy Rule 2002.

54.      The Debtors also request that, upon entry of the Sale Order, the Court waive the fourteen day stay requirement of Bankruptcy Rule 6004(h).  The waiver of the fourteen day stay

27832590.5

imposed by Bankruptcy Rule 6004(h) will allow the sale of the GPMM Assets to close as soon as possible and prevent further delay in the administration of these Cases.   The Debtors respectfully submit that a waiver of Bankruptcy Rule 6004(h) is appropriate under the circumstances.

## Reservation of Rights

55.     Except to the extent provided otherwise by the Sale Order and the Agreement, nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay a claim.

## Notice

56.     Notice of this Motion has been provided to: (a) all entities known to have expressed a *bona fide* interest in a transaction with respect to the GPMM Assets at any time; (b) all entities known to have asserted any lien, claim or encumbrance in or upon any of the GPMM Assets; (c) all federal, state and local environmental, regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (d) the U.S. Trustee; (e) counsel to the Prepetition Agent and the Postpetition Agent for the Prepetition Lenders and the Postpetition Lenders; (f) counsel to the Official Committee of Unsecured Creditors; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; (i) the U.S. Attorney for the District of Delaware; (j) counsel to Cyprium Investors IV AIV I LP; (k) counsel to GreatBanc Trust Company, trustee of the Hobbico, Inc. Employee Stock Ownership Plan; (l) counterparties to any contract or lease sought to be assumed and

assigned pursuant to this Motion; (m) counsel to the Buyer; and (n) all persons and entities that have filed a request for service of filings in these Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE the Debtors respectfully request entry of the Sale Order granting the relief requested herein and such other relief as is just and proper.

Dated: May 10, 2018
Wilmington, DE

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Matthew O. Talmo*
Robert J. Dehney (No. 3578)
Curtis S. Miller (No. 4583)
Matthew O. Talmo (No. 6333)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@mnat.com
cmiller@mnat.com
mtalmo@mnat.com


- and -


NEAL, GERBER & EISENBERG LLP
Mark A. Berkoff (admitted *pro hac vice*)
Nicholas M. Miller (admitted *pro hac vice*)
Thomas C. Wolford (admitted *pro hac vice*)
Two North LaSalle Street, Suite 1700
Chicago, Illinois 60602
Telephone: (312) 269-8000
Facsimile: (312) 269-1747
mberkoff@nge.com
nmiller@nge.com
twolford@nge.com


*Counsel to the Debtors and*
*Debtors in Possession*

27832590.5